# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FELIPE S.P., | Case No. 26-CV-2212 (NEB/DJF) |
| Petitioner, | |
| v. | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |
| TODD BLANCHE, Acting Attorney General; MARKWAYNE MULLIN, U.S. Department of Homeland Security; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; IMMIGRATION AND CUSTOMS ENFORCEMENT; DAREN K. MARGOLIN, Director for Executive Office for Immigration Review; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; DAVID EASTERWOOD, Director, Fort Snelling Field Office Immigration and Customs Enforcement; and RYAN SHEA, Sheriff of Freeborn County, Minnesota, | |
| Respondents. | |

Petitioner Felipe S.P. is in the custody of Immigration and Customs Enforcement ("ICE") pending the outcome of his ongoing removal proceedings. He petitions for a writ of habeas corpus seeking release from custody or a bond hearing. In a Report and Recommendation ("R&R") dated May 22, 2026, United States Magistrate Judge Dulce J. Foster recommends that this Court grant in part and deny in part Felipe S.P.'s petition and order a bond hearing. Respondents object. Because the Court agrees that the Fifth Amendment entitles Felipe S.P. to a bond hearing, the Court accepts the R&R and orders Respondents to provide a bond hearing within five days of this Order.

## BACKGROUND

Felipe S.P. is a citizen of Mexico who has lived in the United States for nearly twenty years. (ECF No. 1 ("Pet.") ¶¶ 8–9.) He first entered the country in 2001 but returned to Mexico five months later after an immigration judge granted him voluntary departure. (*Id.* ¶ 9.) He re-entered the United States in 2006 and has remained here ever since. (*Id.*) He has no criminal convictions, pending criminal charges, or history of violence. (*Id.* ¶ 8.)

In 2024, he married a United States citizen, Katty M. (*Id.* ¶ 10.) Katty M. filed an I-130 petition initiating the process for Felipe S.P. to obtain lawful permanent resident status based on their marriage. (*Id.*) When the couple met with the United States Citizenship and Immigration Services this spring to discuss the petition, Respondents took Felipe S.P. into custody. (*Id.*)

Felipe S.P. petitions this Court for a writ of habeas corpus seeking release from custody or an order requiring a bond hearing. He argues that his detention without an individualized custody determination violates the Fifth Amendment's Due Process and Equal Protection Clauses, the Suspension Clause, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act, and the *Accardi* doctrine.

Judge Foster issued an R&R recommending that the Court grant Felipe S.P.'s petition in part and order a bond hearing because his detention without any process violates the Due Process Clause.[1] (ECF No. 12.) Respondents object (ECF No. 16), so this Court reviews the R&R *de novo*.

---

[1] Because Judge Foster recommends granting Felipe S.P.'s petition on due process grounds, she did not reach the merits of his other claims. (ECF No. 12 at 8 n.3.)

2

## ANALYSIS

### I.   Statutory Framework

Under the INA, the government "shall" detain a noncitizen who is "an applicant for admission" during removal proceedings if the noncitizen "is not clearly and beyond a doubt" entitled to admission. 8 U.S.C. § 1225(b)(2)(A). Since the statute's inception, the government did not apply Section 1225(b)(2) to noncitizens like Felipe S.P. who entered the country without inspection, have lived here for many years, and have no criminal history that otherwise requires mandatory detention under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026). Instead, for nearly thirty years, the government detained those individuals under Section 1226(a), which affords a bond hearing. *Id.* The government changed course in July 2025 and began applying Section 1225(b)(2), which provides no bond hearing, to individuals like Felipe S.P. *Id.*

The Eighth Circuit recently affirmed the government's reading of Section 1225(b)(2)(A). *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026). Under this interpretation, Section 1225(b)(2)(A) prescribes mandatory detention of any noncitizen in the United States who has not been admitted, regardless of where within the country the noncitizen was detained or how long the noncitizen has been here. *Id. Avila* forecloses Felipe S.P.'s statutory claim, as he concedes.

But *Avila* does not close the door on his as-applied Fifth Amendment challenge. *See id.* at 1140 n.8 (Erickson, J., dissenting) (noting that *Avila* does not foreclose due process claims); *see also Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018) (deciding statutory issue but instructing lower court to consider constitutional arguments on remand). The categorical denial of an individualized custody determination, he argues, violates the Fifth Amendment's Due Process Clause. Whether the government may detain citizens

3

like Felipe S.P. without providing any process is a legal question not squarely addressed by Supreme Court or Eighth Circuit precedent. Although the Court therefore proceeds without a clear path, it looks to the bedrock principles of due process and emerging caselaw.

## II.   Felipe S.P.'s Right to Due Process

As a noncitizen living in the United States, the Fifth Amendment's Due Process Clause applies to Felipe S.P. Under the Due Process Clause, the government cannot deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The law is clear: "[P]erson" includes noncitizens residing in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) (holding that "all persons within the territory of the United States are entitled to the protection" guaranteed by the Fifth Amendment); *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (stating that noncitizens, even those "whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments"); *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Having lived in the United States for nearly two decades, the Due Process Clause entitles Felipe S.P. to some process should the government deprive him of his liberty.

### A.   *Liberty Interest*

Freedom from physical restraint "lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). It should go without saying that "liberty" includes freedom from physical

restraint. 2 N. Webster, An American Dictionary of the English Language (1828) (defining liberty as "[f]reedom from restraint, in a general sense, and applicable to the body, or to the will or mind"). And so, "the interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion).

Because the fundamental interest at issue here—freedom from bodily restraint—is expressed in the Due Process Clause,[2] government detention violates the Clause except "in certain special and 'narrow' nonpunitive 'circumstances.'" *Zadvydas*, 533 U.S. at 690 (quoting *Foucha*, 504 U.S. at 80). In those circumstances, a "special justification," like a "harm-threatening mental illness," for example, "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). Applying the jurisprudence of criminal and civil detention, the Supreme Court in *Zadvydas* noted that there was "no sufficiently strong special justification" to warrant *indefinite* civil immigration detention. 533 U.S. at 690. Under *Zadvydas* and the plain language of the Due Process Clause, Respondents must give Felipe S.P. some process when it deprives him of his liberty.

---

[2] By its plain meaning, liberty means freedom from physical restraint, so the Court need not apply the analysis in *Washington v. Glucksberg*, 521 U. S. 702 (1997). That test evolved to mitigate the risk of *unstated* rights. *Mirabelli v. Bonta*, 607 U.S. 492, 499 (2026) (per curiam) (Barrett, J., concurring) ("To mitigate this risk, the Court has crafted a demanding test for recognizing unexpressed rights: They must be 'deeply rooted in this Nation's history and tradition' and implicit in the concept of ordered liberty.'" (quoting *Glucksberg*, 521 U.S. at 721)); *see also Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (applying *Glucksberg* when analyzing an unexpressed right because "[i]dentifying unenumerated rights carries a serious risk of judicial overreach").

This conclusion comports with years of due process jurisprudence beyond the immigration context. "In our society liberty is the norm" and detention "is the carefully limited exception." *Foucha*, 504 U.S. at 83 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The Supreme Court upheld criminal pretrial detention under the Bail Reform Act of 1984 as a "carefully limited exception" because such detention promoted community safety and came with numerous procedural safeguards, including a hearing. *Salerno*, 481 U.S. at 755. Similarly, the government cannot civilly commit someone unless it can show that the individual is mentally ill and dangerous. *Addington v. Texas*, 441 U.S. 418, 426, 431–33 (1979); *Foucha*, 504 U.S. at 80–83. Nor can it indefinitely hold a criminal defendant in commitment because the defendant is incompetent to stand trial. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Although these cases arise in different contexts, they share a bedrock principle: government detention implicates procedural due process protections. Unsurprisingly then, the Supreme Court has drawn on the principles announced in these cases when analyzing due process issues in the immigration context. *Zadvydas*, 533 U.S. at 690 (citing *Foucha* and *Salerno* among other due process cases); *Flores*, 507 U.S. at 315 (O'Connor, J., concurring).

To be sure, Congress has plenary power over immigration, and the Executive Branch has broad discretion in enforcing immigration laws. *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *United States v. Texas*, 599 U.S. 670, 679 (2023). Still, the exercise of that power must comply with the Constitution. *Carlson v. Landon*, 342 U.S. 524, 533 (1952) (explaining that the power to expel noncitizens "is, of course, subject to judicial intervention under the 'paramount law of the constitution'"); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (stating that the Court's determination that a noncitizen was not entitled to a deportation proceeding as a matter of statutory law did not "resolve this case" because petitioner also advanced a due process argument); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 601 (1953) ("While it may be that a resident alien's ultimate right to remain in the United States is

subject to alteration by statute or authorized regulation . . . it does not follow that he is thereby deprived of his constitutional right to procedural due process.") Detention is a "constitutionally permissible" part of removal proceedings. *Demore v. Kim*, 538 U.S. 510, 531 (2003). But in this context, it implicates an important liberty interest protected by the Due Process Clause, so it must serve a constitutionally acceptable purpose. *See Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024).

**B.     *Justifications for Detention***

In other detention contexts, preventing flight risk and limiting danger to the community justify deprivation of an individual's liberty interest. For example, the government may detain citizens accused of committing a crime if such detention ensures appearance at future proceedings and reduces the risk of public harm. *Salerno*, 481 U.S. at 749 ("The government's interest in preventing crime by arrestees is both legitimate and compelling."); *see also Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979) (noting that the government may detain an individual accused of a crime "to ensure his presence at trial" so long as the conditions of confinement do not otherwise violate the Constitution). By natural extension, those same interests can justify detention of noncitizens too.

In fact, these interests animate the regulatory scheme. Although Section 1225(b)(2) permits mandatory detention, the INA still gives the government discretion to release these noncitizens on parole for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). But even still, federal regulation prohibits the government from doing so unless the noncitizen poses "neither a security risk nor a risk of absconding." 8 C.F.R. §§ 212.5(b), 235.3(c). "Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to

determine an alien's status without running the risk of the alien[] either absconding or engaging in criminal activity before a final decision can be made." *Jennings*, 583 U.S. at 286. This regulation lays plain that preventing flight and security risks are through lines in the regulatory landscape.

The government consistently argues as much. In *Zadvydas*, the government justified mandatory detention under Section 1226(c) by arguing that such detention limits flight risk and dangerousness. 533 U.S. at 690–92 (analyzing and rejecting the government's argument that it could indefinitely detain noncitizens with a final order of removal because such detention ensured noncitizens' appearance at future immigration proceedings and prevented danger to the community). And the government continuously asserts that these interests justify detention in the immigration context. *E.g.*, *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("The Government contends that Ramirez's detention [under Section 1225(b)] serves a valid statutory purpose by ensuring his presence at his removal proceedings and securing his availability for removal."); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020) ("The Government has identified its regulatory interest in detaining noncitizens under § 1226(a) as (1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes."). Reinforcing this position is the government's historical practice of detaining people who pose a flight risk or threat to public safety. *See Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) ("Physical detention of aliens is now the exception, not the rule, and is generally employed only as to security risks or those likely to abscond.").

Ensuring appearance at future proceedings and limiting threats to public safety are interests that can justify detaining noncitizens like Felipe S.P. No party argues otherwise. Instead, Felipe S.P. argues that by denying him *any* procedure for assessing

his danger or flight risk, the government has taken his liberty in violation of the Due Process Clause.

### III.   Precedent Does Not Foreclose the Due Process Challenge

Against this backdrop, that freedom from physical restraint is a fundamental liberty interest requiring *some* due process protection, Respondents argue that three cases nonetheless foreclose Felipe S.P.'s due process challenge. Respondents overread each case.

### A.   Demore v. Kim, *538 U.S. 510 (2003)*

In *Demore*, the petitioner was detained under 8 U.S.C. Section 1226(c). Section 1226(c) mandates detention during removal proceedings for a limited class of noncitizens with certain criminal convictions, including those convicted of an aggravated felony.[3] Demore challenged the constitutionality of his detention without an individualized finding of dangerousness or risk of flight. 538 U.S. at 514.

The Court upheld the constitutionality of Section 1226(c). As the Court noted, "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process," but detention must serve its purported purpose. *Id.* at 523, 527–28. Ultimately, the Court concluded that an individualized finding of danger or flight risk is unnecessary where Congress has made evidence-based findings that a subset of noncitizens (those convicted of crimes) is particularly dangerous or at risk of flight.

---

[3] In January 2025, Congress amended Section 1226(c) to include noncitizens arrested for or charged with certain crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)).

The Court thoroughly analyzed congressional findings and purpose in passing Section 1226(c)—to prevent criminal noncitizens from skipping hearings, committing more crimes, and remaining in the country unlawfully. *Id.* at 518–20. Congress considered numerous studies validifying these concerns: criminal noncitizens often failed to appear for removal hearings; criminal noncitizens were often arrested for additional crimes before their removal; upon removal, criminal noncitizens quickly reentered illegally; and there was a direct causal connection between INS's failure to detain criminal noncitizens and INS's failure to remove them. *Id.* As the Court explained, criminal convictions "reflect 'personal activity' that Congress considered relevant to future dangerousness." *Id.* at 525 n.9. And the convictions were adjudicated with the full procedural protections of the criminal justice system. *Id.*

Justice Kennedy, who provided the fifth vote for the *Demore* majority, concurred, concluding that the Court's ruling did not foreclose as-applied challenges: A noncitizen "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring); *see Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1212 (11th Cir. 2016) (explaining that Justice Kennedy's concurrence is especially relevant because he provided the fifth vote), *vacated*, 890 F.3d 952 (11th Cir. 2018) (dismissing appeal as moot).

Although Respondents suggest that *Demore* forecloses Felipe S.P.'s challenge, the better reading of *Demore* is that noncitizens are generally entitled to an individualized finding of danger and risk of flight. Congress may supplant that individualized finding with evidence-based determinations that a subset of noncitizens is dangerous or pose a risk of flight. Section 1225(b)(2) fails this test twice over. First, rather than carve out a subset of noncitizens, Section 1225(b)(2) broadly applies to any "applicant for admission"

10

who is not "clearly and beyond a doubt entitled to be admitted." And unlike Section 1226(c), Section 1225(b)(2) is not accompanied by evidence-based congressional determinations about the need to detain all noncitizens in deportation proceedings. Respondents do not attempt to justify Section 1225(b)(2) based on dangerousness or risk of flight. *Demore* does not foreclose Felipe S.P.'s due process challenge.

**B.     Banyee v. Garland,** *115 F.4th 928 (8th Cir. 2024)*

*Banyee* addresses a due process challenge to a noncitizen's detention under Section 1226(c)—the same statute at issue in *Demore*. Many courts in this Circuit consider *Banyee* an insurmountable hurdle to due process challenges to noncitizens' detention pending deportation proceedings. *E.g.*, *Romero v. Brown*, No. 1:26-CV-00007 (SMR/SBJ), --- F. Supp. 3d ---, 2026 WL 1021455, at *4–6 (S.D. Iowa Apr. 15, 2026); *Mamatkasym Uulu v. Mullins*, No. 4:26-CV-3142, 2026 WL 1463690, at *11–13 (D. Neb. May 26, 2026). But the Court reads *Banyee* differently.

Opinions should be read in light of the question presented. *Cohens v. Virginia*, 19 U.S. 264, 399–400 (1821) ("The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."). The question presented in *Banyee* was "whether the year-long detention violated [Banyee's] rights." 115 F.4th at 931. The Eighth Circuit answered no. *Id.* The parties did not dispute whether Banyee could be constitutionally detained in the first place, which makes good sense: *Demore* already answered that question for noncitizens like Banyee who were detained under Section 1226(c). Rather, the parties—and the court—grappled

11

with whether a multi-factor reasonability test applies to constitutional challenges to the length of detention.

So, the ruling in *Banyee* was about the length of detention, and the court's reasoning reinforces its limited holding. The panel explained that the length of detention does not determine legality, especially because detention has a definite end point—deporting or releasing the noncitizen. *Id.* at 932. The panel distinguished the length of detention from the reason someone is detained. "The *why*," the panel explained, "is more important than *how long*." *Id.* And if deportation were only a remote possibility, that would pose a constitutional problem. *Id.* at 933. *Banyee* cited *Zadvydas* for the principle that "the nature of the protection to which aliens are entitled varies depending upon *status and circumstance*.'" *Id.* at 932 (citation modified). But for Banyee, *Demore* already considered his status and circumstance. *Id.* at 933. A multi-factor reasonability test was unnecessary because *Zadvydas* and *Demore* did all the balancing that was necessary—based on those cases, noncitizens with criminal convictions detained under Section 1226(c) can be detained during the entirety of deportation proceedings. *Id.*

The concurrence and dissent from denial of rehearing *en banc* emphasize this point—that *Banyee* is limited to the length of detention. Judge Stras, the author of *Banyee*, explained that the panel held that "due process set no deadline for how long [detention during deportation proceedings] could take." *Banyee v. Bondi*, 131 F.4th 823, 824 (8th Cir. 2025) (Stras, J., concurring). The dissent saw it the same way. *See id.* at 827 (Colloton, J., dissenting) ("The panel in this case declared that the Due Process Clause places no constraint on how long the government may detain an alien under 8 U.S.C. § 1226(c) without a bond hearing pending a decision on whether the alien is to be removed from the country: three years, five years, ten years—there is no limit.").

12

The Court recognizes that some language in *Banyee*, viewed in isolation, is broad. *E.g.*, 115 F.4th at 930–31 (noting that the Supreme Court's "longstanding view" is that the government "may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings") (quoting *Demore*, 538 U.S. at 526). But interpreting that language as broadly applying to the decision to detain *any* noncitizen, not just those detained under Section 1226(c), during removal proceedings, goes too far. The Court must read general expressions in context. *Cohens*, 19 U.S. at 399 ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.").

Read in context, *Banyee*'s language makes sense. *Banyee* states that the Supreme Court "opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still '*pending*,'" meaning that the length of detention does not pose a constitutional issue for a noncitizen detained under Section 1226(c) due to criminal history. 115 F.4th at 933 (quoting *Demore*, 538 U.S. at 527). That sentence makes little sense if read to mean that the government can detain any noncitizen for any reason with no process. *Banyee*'s statement that Supreme Court cases "leave no room for a multi-factor 'reasonableness' test," means that Banyee, who was detained under Section 1226(c), is not entitled to any *further* balancing; the Supreme Court already balanced those interests in *Demore* and *Zadvydas*. 115 F.4th at 933.

In sum, *Banyee* addresses the constitutionality of the length of detention under Section 1226(c). It does not foreclose interest balancing to the decision to detain any noncitizens.

*C.*      **Department of Homeland Security v. Thuraissigiam***, 591 U.S. 103 (2020)*

And finally, *Thuraissigiam* does not stand in Felipe S.P.'s way. *Thuraissigiam* held that noncitizens apprehended near the border have no constitutional right to review of their expedited deportation orders. *Id.* at 117–18, 140. The decision is inapplicable here because Felipe S.P. does not challenge the reviewability of his removal but rather the lawfulness of his detention without an individualized hearing. And he was not detained near the border nor shortly after making it into the country; he has resided in the United States for almost twenty years and was detained in Minnesota. *Compare id.* at 107 ("[A]liens who have established connections in this country have due process rights in deportation proceedings . . . ."), *with id.* at 140 (explaining that noncitizens "detained *shortly after* unlawful entry cannot be said to have 'effectuated an entry'") (emphasis added)); *see e.g., R. M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306, at *5–7 (D. Minn. May 29, 2026) (distinguishing *Thuraissigiam* because *R.M.* challenged the lawfulness of his detention, not removability, and was not arrested near the border). Although "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore*, 538 U.S. at 522, noncitizens within the United States after entry, even illegal entry, are afforded "additional rights and privileges" than those "on the threshold of initial entry." *Leng May Ma*, 357 U.S. at 187 (citation omitted). *Thuraissigiam* is therefore inapplicable. These three cases do not bar Felipe S.P.'s due process claim.

**IV.     Process Due**

Because the Due Process Clause applies to Felipe S.P., the Court next considers "what process is due." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (citation omitted). Even if the government is justified in depriving an individual of liberty, it must do so "in a fair manner." *Salerno*, 481 U.S. at 746.

14

Fundamental to due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (explaining that "there can be no doubt that at a minimum" due process requires "that deprivation of life, liberty or property" be preceded by notice and an opportunity to be heard). But due process cannot otherwise be distilled into a fixed legal rule. Flexible by nature, it "calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (citation omitted). The most common way that courts analyze procedural due process is by applying the standard set forth in *Mathews* itself. This framework weighs: (1) the private interest affected by government action; (2) the risk of erroneous deprivation of that interest based on the current procedures, and the probable value of additional or other procedural safeguards; and (3) the government's interest, "including the function involved as well as fiscal and administrative burdens" of additional process. *Id.* at 335.

Respondents contend that *Mathews* is the wrong framework for assessing Felipe S.P.'s due process claim, though it does not suggest a better one. *Mathews* is certainly not the only lens through which courts analyze procedural due process. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). But it is the most useful in this case. As a balancing test, it allows the Court to give adequate weight to the government's heightened interest in immigration while also considering Felipe S.P.'s private liberty interest as an individual well-settled in the United States. Because of this, federal courts around the country apply it when analyzing what process the government owes noncitizens detained during

removal proceedings, including those detained under Section 1225(b)(2).[4] This Court joins them.

## A.    Private Interest

Felipe S.P.'s private interest is paramount. His interest in being free from detention is fundamental and essential to his liberty. *Zadvydas*, 533 U.S. at 690; *Hamdi*, 542 U.S. at 529–31. Although Felipe S.P. entered the country unlawfully, he has established a life here and therefore retains a strong interest in his freedom from detention. *Mendoza v. Noem*, 823 F. Supp. 3d 636, 649 (W.D. Tex. 2026).

For the past twenty years, Felipe S.P. has planted roots and made a life for himself in the United States. He is married to a United States citizen with whom he shares stepchildren who are also citizens. (ECF No. 7-4 at 2.) He has no criminal or violent history. (Pet. ¶ 8.) And his current detention stems from following the procedures for

---

[4] *Nabijon N. v. Mullin*, No. 26-CV-2469 (LMP/LIB), 2026 WL 1759442, at *3–4 (D. Minn. June 18, 2026) (using *Mathews* to analyze procedural due process claim of an individual detained under Section 1225(b)(2)); *Alicia N.F.C. v. Blanche*, No. 26-CV-2145 (DWF/JFD), 2026 WL 1005079, at *2–3 (D. Minn. Apr. 14, 2026) (same); *Axel J.M.C. v. Stanski*, No. 26-CV-2281 (JRT/EMB), 2026 WL 1171344, at *3–4 (D. Minn. Apr. 29, 2026) (same); *Milton A. v. Brott*, No. 26-CV-2580 (SRN/EMB), 2026 WL 1493709, at *2–4 (D. Minn. May 28, 2026) (same); *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 797–99 (S.D. Tex. 2026) (same); *Gomes v. Garite*, No. 25-CV-00663 (DCG), 2026 WL 1179617, at *6–9 (W.D. Tex. Apr. 21, 2026) (same); *Cerda-Espinosa v. Bondi*, --- F. Supp. 3d ---, No. SA-26-CA-00819-XR, 2026 WL 754841, at *13–14 (W.D. Tex. Mar. 13, 2026) (same). While the Supreme Court did not expressly deploy *Mathews* in *Demore v. Kim*, 538 U.S. 510 (2003) and *Reno v. Flores*, 507 U.S. 292 (1993), it did do so when considering a due process challenge to an immigration exclusion hearing. *Plasencia*, 459 U.S. at 34–35. And when assessing due process challenges to detention under 8 U.S.C. Section 1226(a), the First, Second, Fourth, and Ninth Circuits all use *Mathews*. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (citing cases).

requesting a change in his immigration status based on his marriage. (*Id.* ¶ 10.) His life and well-established connections here strengthen his private interest. *Thuraissigiam*, 591 U.S. at 107 (stating that noncitizens "who have established connections in this country have due process rights in deportation proceedings"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (explaining that noncitizens "receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"); *Plasencia*, 459 U.S. at 34 (considering noncitizen's "weighty" interest in "stay[ing] and liv[ing] and work[ing] in this land of freedom" with her immediate family, who also lived in the United States (citation omitted)).

Further compounding his private interest is that Felipe S.P.'s civil detention is largely identical to criminal detention. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (considering detention conditions when analyzing the first *Mathews* factor); *Velasco Lopez v. Decker*, 978 F.3d 842, 850–52 (2d Cir. 2020) (same). He is detained at the Freeborn County jail, which houses civil detainees in the immigration context, pre-trial criminal arrestees, and convicted prisoners serving sentences. His detention strips him of his contact with friends and family, denies him the opportunity to work, and restricts his freedom of movement. *Günaydın v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025). The deprivation of Felipe S.P.'s private liberty interest cannot be overstated.

Respondents' counter is unconvincing. They argue that Felipe S.P. does not have a constitutionally cognizable private interest to remain in the United States, so he is not due any process beyond what Congress authorized in the INA. The Supreme Court already rejected this line of reasoning in *Zadvydas*. Felipe S.P.'s private liberty interest arises not from an interest in remaining in the United States, but from being free from physical restraint. So the choice is not between detention and living in the United States indefinitely, but rather "between imprisonment and supervision under release conditions

17

that may not be violated" for the duration of his removal proceedings. *Zadvydas*, 533 U.S. at 696. The first *Mathews* factor weighs heavily in Felipe S.P.'s favor.

## B.    Risk of Erroneous Deprivation

Felipe S.P.'s detention without an individualized bond hearing assessing his flight and security risks poses a danger of an erroneous deprivation. "Procedural due process rules are meant to protect against the mistaken or unjustified deprivation of life, liberty, or property." *A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (quotation marks and citation omitted). In other words, a risk of erroneous deprivation is the risk of a mistaken or unjustified deprivation of liberty.

Felipe S.P.'s detention must "bear some reasonable relation to the purpose for which" he is detained. *Seling v. Young*, 531 U.S. 250, 265 (2001); *Zadvydas*, 533 U.S. at 690 (reiterating that detention must bear a reasonable relation to its purpose); *see also Jackson*, 406 U.S. at 738 ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *Foucha*, 504 U.S. at 79 (same).

While preventing flight and security risks can justify detention of a noncitizen, Felipe S.P. is left with no mechanism to challenge whether his detention serves those purposes. Section 1225(b)(2) does not provide Felipe S.P. any procedure to challenge whether he poses a flight or security risk.[5] The government has not given him any

---

[5] In contrast, the government gives noncitizens detained under Section 1226(c) a *Jospeh* hearing where they can contest whether they committed a crime that subjects them to mandatory detention under Section 1226(c). *Jennings*, 583 U.S. at 289 n.1. The Court is not aware, nor have Respondents pointed to, a similar mechanism for challenging detention under Section 1225(b)(2).

individualized review as to the need for his detention, and there is no opportunity for a hearing to contest his flight risk or dangerousness.[6]

This is so even though Felipe S.P.'s circumstances bear directly on these considerations. Having spent almost twenty years of his life living in the United States, Felipe S.P. has planted firm roots here, including through his marriage to a United States citizen. Yet Respondents have denied him any process in which he could raise these facts to challenge the government's justification for his liberty deprivation. This poses a risk of erroneous deprivation that is furthered by Respondents' failure to make any argument that he would remain detained even if given a bond hearing. *Restrepo v. Jamison*, 823 F. Supp. 3d 529, 543 (E.D. Pa. 2026) ("Where, as here, the Government has not alleged circumstances that would indicate that [petitioner] poses a danger to the community or is a flight risk, the risk of an erroneous deprivation is higher."). Because his detention must be reasonably related to its intended purpose, Felipe S.P.'s detention without an individualized determination of flight risk and dangerousness increases the likelihood of erroneous deprivation. *Rodriguez v. Frink*, 823 F. Supp. 3d 678, 689–90 (S.D. Tex. 2026); *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 798 (S.D. Tex. 2026); *Chavero v. Bondi*, 818 F. Supp. 3d 836, 844–45 (W.D. Tex. 2025). Conversely, the probable value of a bond hearing assessing these facts is substantial.

Respondents argue that Felipe S.P.'s flight risk and dangerousness are irrelevant because Section 1225(b)(2) mandates detention without reference to those criteria. True enough. But even with Congress's plenary power over immigration matters, the

---

[6] Felipe S.P.'s underlying removal proceedings do not reduce the risk of erroneous deprivation here. While that process may protect him against erroneous removal, it does nothing to protect against erroneous detention.

Constitution, not legislation, sets the floor for due process. Section 1225(b)(2) therefore does not answer the question of what process Respondents owe Felipe S.P. *Loudermill*, 470 U.S. at 541 (stating that the answer to "what process is due" under the Due Process Clause "is not to be found in the [state] statute"). The second *Mathews* factor weighs in favor of Felipe S.P.

### C.   *Government Interest & Burden*

The government has a strong interest and discretion in enforcing immigration law. *Muñoz*, 602 U.S. at 911–12 ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). "Over no conceivable subject is the legislative power of Congress more complete." *Flores*, 507 U.S. at 305 (citation modified). So the Court weighs "heavily" that "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Plasencia*, 459 U.S. 21 at 34. Even so, Respondents have not shown that providing a bond hearing is a burden that outweighs Felipe S.P.'s private interest and the risk of erroneous deprivation.

Respondents claim that giving Felipe S.P. a bond hearing would burden the system because there are over three million cases currently pending in immigration court. (ECF No. 16 at 9–10.) But Respondents fail to articulate this burden in any concrete or meaningful way. Nor is it obvious that a bond hearing is particularly burdensome. *Abdirashid H. M. v. Noem*, No. 25-CV-4779 (JRT/EMB), 2026 WL 127698, at *5 (D. Minn. Jan. 9, 2026) ("[A] bond hearing would impose minimal, if any, financial or administrative burden on Respondents."). Prior to July 2025, the government gave noncitizens like Felipe S.P. bond hearings. *See Jesus Alejandro G. A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *12 (D. Minn. May 18, 2026). Decades of prior practice

20

refutes the government's protestations here. Any burden that a bond hearing may impose does not outweigh Felipe S.P.'s strong private interest. *Id.*

While Respondents' interest here is great, the burden imposed by a bond hearing is minimal. And Felipe S.P.'s private interest and the risk of erroneous deprivation of that liberty interest are significant. On net, the *Mathews* factors weigh in favor of Felipe S.P., and due process requires that he receive a bond hearing. The Court therefore accepts the R&R, grants in part his petition, and orders that Respondents provide him with a bond hearing.[7]

In reaching this conclusion, the Court does not predict the ultimate outcome of Felipe S.P.'s bond hearing. It does not decide whether Felipe S.P. is or is not a flight risk or whether he does or does not pose a danger to the community. The Court does not concern itself with the answer to those questions. But the Constitution requires that Respondents give Felipe S.P. a process by which to contest those determinations. Without it, his detention violates the Fifth Amendment.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      The Report and Recommendation (ECF No. 12) is ACCEPTED;

---

[7] Felipe S.P. challenges his detention on additional grounds, but the Court need not reach the merits of those claims because it grants him relief based on his procedural due process claim.

2.    Petitioner Felipe S.P.'s Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED IN PART and DENIED in part;

3.    Respondents are ordered:

   a.    To provide Felipe S.P. with a bond hearing no later than Tuesday, July 7, 2026;

   b.    That any decision to retain Felipe S.P. in custody following the bond hearing must set forth the reasons for his continued detention;

4.    Respondents are ordered that, should the bond hearing result in Felipe S.P.'s release, they must release him from custody:

   a.    Inside the State of Minnesota;

   b.    At a safe time and place communicated in advance to counsel; and

   c.    With all Felipe S.P.'s personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys;

5.    The remainder of Felipe S.P.'s Petition is DENIED WITHOUT PREJUDICE.


Dated: July 2, 2026                                    BY THE COURT:

                                                       s/Nancy E. Brasel
                                                       Nancy E. Brasel
                                                       United States District Judge


22